IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK LEE RINDLESBACH, et al.,<br><br>Appellants,<br><br>v.<br><br>PHILIP G. JONES, et al.,<br><br>Appellees. | **MEMORANDUM DECISION AND ORDER GRANTING APPELLEES' MOTIONS TO DISMISS**<br><br>Case No. 2:14-cv-00577<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court are two Motions to Dismiss filed by Philip G. Jones, Chapter 7 Trustee for the bankruptcy estate of Mark Lee Rindlesbach ("Trustee"), (Dkt. No. 25); and The Ruth B. Hardy Revocable Trust, Delcon Corporation Profit Sharing Plan fbo A. Wesley Hardy, Finesse P.S.P., MJS Real Properties, LLC, Uintah Investments, LLC, David D. Smith, Steven Condie, David L. Johnson, Berrett PSP, VW Professional Homes PSP, Ty Thomas, and D.R.P. Management PSP ("Hardy Lenders"), (Dkt. No. 29). The court held oral argument on May 5, 2015, and took the matters under advisement. After carefully considering the parties' briefs and oral arguments, the court GRANTS the Trustee's and the Hardy Lenders' Motions to Dismiss on the grounds that this appeal is not justiciable.

## BACKGROUND

This appeal arises out of Mark Lee Rindlesbach's ("Debtor") bankruptcy, and the Trustee's settlement of the Hardy Lenders' claims. On May 25, 2007, the Hardy Lenders made a

loan of $3.3 million to Eagle Mountain Lots, LLC, for the acquisition of land in Eagle Mountain, Utah. Debtor, as trustee for the Rindlesbach Construction Inc. Profit Sharing Plan ("Plan"), was one of the guarantors for the loan. When Eagle Mountain Lots defaulted, the Hardy Lenders filed suit against the guarantors in July 2008, and after amending the complaint, against Debtor in his personal capacity, ("Guaranty Action"). Prior to and during the pendency of the suit, Debtor transferred various parcels of real property from his ownership, as well as from various entities where Debtor was a partial owner. (Bankr. Dkt. No. 295, pp. 5-10, 35-37). The state trial court granted summary judgment in favor of Debtor, finding that he was not personally liable on the guaranty. The Hardy Lenders have appealed that decision, which is now pending in the Utah Court of Appeals. A jury rendered a verdict in favor of the Hardy Lenders for their claim against the Plan, and on December 3, 2012, the state court entered a judgment in the amount of $6,367,203.64.

On November 5, 2012, and January 9, 2013, the Hardy Lenders initiated two fraudulent transfer actions in state court in Tooele and Salt Lake Counties, contending that after the jury rendered a verdict in the Guaranty Action, Debtor transferred most of the assets out of the Plan and personally retained a portion of the sale profits, ("Fraudulent Transfer Actions"). The state court in the Salt Lake County action ordered Debtor to deposit $2.2 million into the registry of the court pending resolution of the claims. Debtor failed to surrender the entire amount required by the court order. In light of that, and for other violations of the court's orders, an Order to Show Cause was entered, and an evidentiary hearing was held on August 26, 2013. At the hearing, the state court made a bench ruling holding Debtor in contempt, and ordered him to deposit the remaining funds with the court and pay the Hardy Lenders' expenses for the contempt proceedings. Instead of complying, Debtor filed a bankruptcy petition under Chapter 11 on

September 13, 2013. The automatic stay placed the Hardy Lender's appeal and the Fraudulent

Transfer Actions on hold, and prevented the entry of a written contempt order. The bankruptcy

was converted to a Chapter 7 case on January 13, 2014.

In the bankruptcy proceeding, the Hardy Lenders asserted claims totaling $17,524,705.13,

comprised of $7,030,836.74 (and potentially up to $9,249,535.64) for their Guaranty Action

appeal arguing that Debtor is personally liable for the state court guaranty judgment,

$3,592,703.24 for the claims made in the Fraudulent Transfer Actions,[1] and $5,000,000.00 for a

punitive damages claim. On May 21, 2014, the bankruptcy Trustee entered into an agreement

with the Hardy Lenders to settle their outstanding claims against the bankruptcy estate. Under the

settlement, the Hardy Lenders agreed to pay the Trustee $500,000.00, with both parties releasing

each other from any claims or obligations other than those specified in the settlement. In

exchange, the Trustee agreed to allow the Hardy Lenders' claims in the reduced amount of

$4,000,000.00, subordinated to all other unsecured claims against the estate. Specifically, the

settlement allowed $2,610,000.00 for the personal liability claim, $1,390,000.00 for the

fraudulent transfer claim, and $0 for the punitive damages claim.

The settlement further assigned to the Hardy Lenders "any and all claims and causes of

action of or available to the Trustee or the Estate." The Hardy Lenders were required to pay 5% of

the net recovery to the holders of unsecured claims in proportion to their allowed amounts, to the

extent that the claims were still outstanding, ("Assignment Provision"). Finally, the settlement

allowed for the modification of the automatic stay to allow prosecution of the pending state court

appeal in the Guaranty Action and to permit the state court to enter findings of fact and

conclusions of law in the contempt proceeding; with an agreement that the Trustee was to

---

[1] Of this amount, $317,533.75 is duplicative with the personal liability claim.

stipulate to the entry of a consent order in the Utah Court of Appeals reversing or vacating summary judgment in favor of the Debtor, and to the entry of judgment against Debtor in the amount of $2,610,000.00 upon remand, ("Judgment Provision").

Debtor was the only party that objected to the settlement, which was approved by the bankruptcy court on July 21, 2014, in an Order Granting Trustee's Motions For Order Approving: (1) Settlement Between The Trustee and The Hardy Parties and (2) Settlement Between The Trustee and The Lexon Parties. After Debtor's discharge was granted on July 30, 2014, he filed a motion for reconsideration of the order approving the settlement, but this was also denied. Debtor and two creditors, FFAF Properties ("FFAF") and Bennet Tueller Johnson & Deere ("BTJD"), proceeded to appeal to this court the order approving the Hardy Lenders' settlement.[2] Before this court all appellants object to the Assignment Provision. Debtor also objects to the Judgment Provision. After filing his notice of appeal, Debtor requested the bankruptcy court enter a stay pending appeal. When the motion was denied, Debtor did not appeal from the decision or request a stay from this court. Neither FFAF or BTJD sought a stay from the bankruptcy court or this court.

In the absence of a stay, the bankruptcy court approved the Trustee's Final Report on March 10, 2015, and the Trustee made final distribution of the assets to the allowed claims and as provided in the settlement agreement. The Trustee now moves the court to dismiss this appeal on the grounds of constitutional and equitable mootness. The Hardy Lenders also move to dismiss on the additional grounds that appellants lack standing; that the claims concerning the Assignment Provision are not ripe; and that the appeal is statutorily, constitutionally, and equitably moot.

---

[2] FFAF filed this appeal as assignee of Claim 12-1, originally filed by creditor Zions First National Bank, ("Zions Bank"). (Bankr. Dkt. No. 450).

ANALYSIS

This court has jurisdiction to hear this case pursuant to 28 U.S.C. § 158(a)(1). On appeal, the bankruptcy court's findings of fact will not be overturned unless they are clearly erroneous, while its legal conclusions are reviewed *de novo*. *In re Herd*, 840 F.2d 757, 759 (10th Cir. 1988). However, before the court can reach the merits of the appeal, it must satisfy itself that the case presents a justiciable controversy and that all issues raised are properly before the court. *See Anderson v. West (In re Anderson)*, 2015 U.S. App. LEXIS 7088 (10th Cir. Apr. 29, 2015).

**I. Standing**

Parties appealing from a bankruptcy court order bear the burden of demonstrating that they possess the requisite standing to bring their challenge before the district court. *See Lopez v. Behles (In re Am. Ready Mix)*, 14 F.3d 1497, 1500 (10th Cir. 1994). The requirements for such standing are more stringent than the case or controversy standing requirement of Article III. *Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 357 n.6 (10th Cir. 1995). "As a general matter, in a Chapter 7 proceeding, the trustee alone has standing to raise issues before the bankruptcy court and to prosecute appeals." *Flynn v. Finch (In re Colorado Mountain Cellars, Inc.)*, 1998 U.S. App. LEXIS 2868, *7 (10th Cir. Feb. 24, 1998) (quoting *Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 657 (4th Cir. 1997)).

A. Debtor

For a debtor to have appellate standing, he must qualify as a person aggrieved, with his rights or interests being directly and adversely affected pecuniarily by the order of the bankruptcy court. *In re C.W. Mining Co.*, 636 F.3d 1257, 1260 (10th Cir. 2011). "Accordingly, [1] 'unless the estate is solvent and excess will eventually go to the debtor, or [2] unless the matter involves rights unique to the debtor, the debtor is not a party aggrieved by orders affecting the

5

administration of the bankruptcy estate.'" *Id.*

Debtor does not maintain that the estate is solvent or that he will receive an equity participation in the bankruptcy estate. Instead, he argues that his discharge is compromised by the Judgment Provision. Specifically, Debtor claims that if judgment is entered, he will be burdened with post discharge liability that would be reflected on his credit report, that he would be required to explain that the liability was discharged in bankruptcy whenever he applies for credit, and that lenders might not offer him credit, or do so on less favorable terms. He also contends that because the bankruptcy court allowed the Hardy Lenders' claims, there is no need for them to resume the Guaranty Action (requiring that he retain counsel and file pleadings) in order to pursue fraudulent transfer claims. As to the Assignment Provision, Debtor's only alleged harm is that he will be subject to discovery and will have to testify as a witness at trial.

Post discharge prosecution of claims is contemplated and permitted by the bankruptcy code. Section 524(e) allows a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when establishing liability is a prerequisite to recover from another entity. *In re Walker*, 927 F.2d 1138, 1141-42 (10th Cir. 1991). This exception to section 524(a)'s post-discharge injunction "hinges 'upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life.'" *Id.; see also Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307-1308 (10th Cir. 2008). Under UTAH CODE ANN. §25-6-6, the transfers in question would only be fraudulent if the Hardy Lenders had a claim against Debtor that arose before the transfers were made. Because the state court dismissed Debtor from the guaranty action for lack of personal liability, the entry of judgment against him may be necessary to avoid preclusion issues that could hinder recovery from third parties.

Given that judgments for discharged debts are void pursuant to 11 U.S.C. § 524, it is improbable that Debtor will be harmed by the entry of a judgment in the Guaranty Action.[3] In the event that the Hardy Lenders were to attempt to collect on the state court judgment, Debtor would have recourse to seek sanctions for violation of the discharge order. *In re Paul*, 534 F.3d at 1306-7. Debtor has also failed to present any evidence that a void post discharge judgment would affect his credit prospects beyond the impact that his Chapter 7 bankruptcy—which will remain on his credit report for ten years—has already had, that he will not be able to persuade creditors that the claims have been discharged, or that he will receive credit on less favorable terms.[4] Because Debtor bears the burden of establishing he has standing, he cannot rely on mere speculative harm. As such, the court concludes that Debtor lacks standing to appeal from the Judgment Provision.

Debtor also lacks standing to challenge the Assignment Provision because it does not involve "rights unique to the debtor." There is no contention that any recovery from the assigned claims is exempt property, or that debtor will be subject to personal liability, given that said claims are against third parties. *See Weston v. Mann (In re Weston)*, 18 F.3d 860, 864 n.3 (10th Cir. 1994). As such, the only rights in question are those of the estate's creditors, who stand to receive payment for their outstanding claims based on the outcome of the assigned actions. Because Debtor "is not relieved of the responsibility [he] has, as do all citizens, to testify at trial and/or participate in discovery as a witness," he also fails to allege any cognizable harm suffered as a result of this provision. *In re Paul*, 534 F.3d at 1307.

---

[3] While the bankruptcy court's order approving the settlement agreement lifts the automatic stay "to allow the Third District Court to enter findings of fact and conclusions of law in the contempt proceeding," it does not permit the entry or prosecution of a monetary judgment against Debtor. (Dkt. No. 47-1, ¶ 13.A). If Debtor believes that the Hardy Lenders have acted beyond the scope of the aforementioned provision, his remedy lies with the bankruptcy court.

[4] The harms alleged by Debtor would occur every time a judgment is entered after discharge. Despite that being the case, such suits have been permitted to allow recovery from third parties.

B. FFAF and BTJD

"Prerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding." *In re Weston*, 18 F.3d at 684 (quoting *Matter of Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992)). Neither FFAF's predecessor in interest, Zions Bank, nor BTJD raised any objections to the settlement with the bankruptcy court or joined in Debtor's motion to reconsider. Accordingly, they lack standing to appeal the validity of the Assignment Provision.

All appellants attempt to sidestep their lack of standing by arguing that the bankruptcy code does not permit the Trustee's assignment of the estate's claims to a creditor, and as such, the bankruptcy court lacked subject matter jurisdiction to approve a settlement with such a provision. In essence, their argument is that a bankruptcy court's order approving a settlement is a question of subject matter jurisdiction, and not one on the merits of the bankruptcy. The argument fails. The Trustee's motion for an order approving the settlement was a core proceeding as defined in 28 U.S.C. § 157(b)(2), because it addressed matters concerning the administration of the estate, the allowance of claims, the approval of a sale of property, and affected the liquidation of assets of the estate. It was also consistent with FED. R. BANKR. P. 9019(a), which states that "[o]n motion by the trustee and after notice and a hearing, the [bankruptcy] court may approve a compromise or settlement." Having subject matter jurisdiction, the bankruptcy court was free to grant or deny the Trustee's motion. Appellant's failure to object, and thus preserve their arguments, prevents them from appealing the correctness of the decision.

## II. Mootness

A. Constitutional and Equitable Mootness

An appeal of a bankruptcy court order is constitutionally moot where "the appellee

demonstrates that a court could order no meaningful relief to the party seeking reversal of the

bankruptcy court's decision." *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327,

1330 (10th Cir. 2009). Even if an appeal is not constitutionally moot, the underlying

circumstances may make it inequitable for the court to grant the requested relief.[5] To determine

whether an appeal is equitably moot, the Tenth Circuit considers the following factors:

> (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the
> appealed plan been substantially consummated? (3) Will the rights of innocent
> third parties be adversely affected by reversal of the confirmed plan? (4) Will the
> public-policy need for reliance on the confirmed bankruptcy plan—and the need
> for creditors generally to be able to rely on bankruptcy court decisions—be
> undermined by reversal of the plan? (5) If appellant's challenge were upheld, what
> would be the likely impact upon a successful reorganization of the debtor? And (6)
> based upon a quick look at the merits of appellant's challenge to the plan, is
> appellant's challenge legally meritorious or equitably compelling?

*Id.* at 1339.

Both the Trustee and the Hardy Lenders contend that this appeal is moot because the

bankruptcy court approved the final distribution, and the estate's funds have been disbursed to

creditors with allowed claims. Appellants reply that they are not challenging the settlement

agreement as a whole, and that they do not seek a reversal of the distributions that have already

been made. Instead, they contend that their appeal is limited to "two isolated and narrow aspects,"

the alleged invalidity of the Judgment and Assignment Provision. (Dkt. No. 47, p. 1). The

requested relief is for the court to strike the objected portions. In effect, appellants are asking the

court to rewrite the settlement agreement.

The settlement agreement, however, contains no severability clause, and the provisions in

---

[5] While the Tenth Circuit has applied equitable mootness in Chapter 11 cases, they have not addressed its
applicability it in Chapter 7 cases. This court has previously applied equitable mootness in the liquidation context,
noting that "no circuit has affirmatively held equitable mootness inapplicable," and that "[a]fter a thorough review of
the relevant case law, the Court is persuaded that equitable mootness should apply." *ANR Co. v. Rushton*, 2012 U.S.
Dist. LEXIS 61795, *11 n.23 (D. Utah May 2, 2012); *see also Davis v. Shepard*, 2014 U.S. Dist. LEXIS 82804, *20-
21 n.10 (N.D. Ala. June 18, 2014); *but see Liberty Bank, F.S.B. v. D.J. Christie, Inc.*, 2013 U.S. Dist. LEXIS 177977,
*7-9 (D. Kan. Dec. 19, 2013).

questions are a central part of the agreement, without which "there would have been no bargain whatever." *United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 298-299 (1942); *Security Underground Storage, Inc. v. Anderson*, 347 F.2d 964, 967-968 (10th Cir. 1965). This becomes clear when considering that even if the Hardy Lenders' bankruptcy claims against Debtor were allowed, they would not be able to collect on them after his discharge. As such, the provisions allowing them to prosecute fraudulent transfers against third parties would be the only means of recovery left to them. This satisfies the court that the settlement provisions are not severable.

The only alternative—reversing the bankruptcy court's order approving the settlement and undoing the agreement—is practically impossible at this point. To begin with, the funds that have been distributed to non-parties to this appeal, including several creditors and the law firm representing the trustee, cannot be disgorged. *See In re Blumer*, 66 B.R. 109, 113 (B.A.P. 9th Cir. 1986) ("Effective relief is impossible if funds have been disbursed to persons who are not parties to the appeal."). In addition, the Lexon Parties received payment of their reduced claims pursuant to their settlement with the Trustee. There being no appeal over the bankruptcy court's approval of the Lexon Parties' settlement, the court lacks authority to require a return of the funds paid.[6]

Even if some sort of relief could be fashioned, there has been a substantial change in circumstances due to the final distribution of the estate that would make reversal equitably moot. While Debtor sought a stay from the bankruptcy court, this was denied, and no request for a stay was made to this court. FFAF and BTJD never even attempted to procure a stay. The result has been a substantial consummation of the agreement appellants would now like to revise, and the final distribution of the estate's assets. A reversal at this stage would adversely affect all creditors. Not only would it require them to return the funds they received, which they more than likely

---

[6] There are also due process concerns because the Lexon Parties have never been afforded notice or the opportunity to be heard as to the invalidation of their settlement. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

have already spent, it would also undo the settlement of the Lexon Parties—the second largest

creditor of the estate. Such a result would seriously undermine the ability of parties to rely on the

finality of settlements approved by bankruptcy courts. It is of significant importance that if the

plan were to be set aside, the Trustee has stated that there is no likelihood of reaching a new

settlement. (Dkt. No. 42-3, p. 55-56). With the remaining assets abandoned, creditors would

receive no payment on their claims.

      Finally, there is a strong likelihood that the Hardy Lenders would prevail on the merits of

their appeal before this court. As discussed above, the post-discharge judgment in the Guaranty

Action appears to be necessary to prosecute third party fraudulent transfers, and will not

compromise Debtor's discharge. With regards to the Assignment Provision, the Tenth Circuit has

not directly spoken on the question of whether a creditor may derivatively prosecute estate causes

of action. Addressing whether the Supreme Court's decision in *Hartford Underwriters Ins. Co. v.

Union Planters Bank, N.A.*, 530 U.S. 1, 7-8 (2000), undermined this Circuit's previous practice of

allowing those actions, the Tenth Circuit noted that "other circuits have continued to allow

committees to bring avoidance actions." *Hill v. Akamai Techs., Inc. (In re MS55, Inc.)*, 477 F.3d

1131, 1139 n.9 (10th Cir. 2007). This court agrees with the Bankruptcy Court for the District of

Kansas' conclusion in *Vill. of Overland Pointe, LLC v. Terra Bentley II, LLC (In re Bentley II,

LLC)* that there is "no reason to believe the Tenth Circuit would disagree with the unanimous

view of the Circuits that have decided the question." 2011 Bankr. LEXIS 806, *11 (Bankr. D.

Kan. Mar. 2, 2011) (noting that "[n]o Circuit court appears to have concluded derivative standing

for creditors is never permissible" and discussing applicable precedents); *Springs East Land Co.,

LLC v. Goss (In re Ellicott Springs Res., LLC)*, 485 B.R. 626, 636 (Bankr. D. Colo. 2013).

B. Statutory Mootness

Under 11 U.S.C. § 363(m), "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

While Debtor contends that no sale has taken place, the Tenth Circuit has held that "[dispossession] of assets in accordance with [a] compromise and settlement renders [an] appeal moot under Bankruptcy Rule 8005 and 11 U.S.C. § 363(m)." *Weatherford v. Bonney*, 1993 U.S. App. LEXIS 31594, *3-4 (10th Cir. Aug. 12, 1993). The assigned claims constitute assets of the bankruptcy estate under 11 U.S.C. § 541(a)(1). As §"363(b) is the primary section allowing for the sale of part of the debtor's property, other than in the ordinary course of business," the bankruptcy court is not required to denote the sale as being made pursuant to § 363(b) for the protection of § 363(m) to apply. *See In re Sax*, 796 F.2d 994, 997 n.7 (7th Cir. 1986). However, the court recognizes that no party made a request for the bankruptcy court to make a specific finding of good faith. Accordingly, even were the appeal not constitutionally or equitably moot, the appropriate remedy would be a remand to the bankruptcy court for specific findings with regards to the Hardy Lenders' good faith. *Guadano v. Holbrook (In re Indep. Gas & Oil Producers, Inc.)*, 80 Fed. Appx. 95, 100 (10th Cir. 2003).

## CONCLUSION

It is therefore ORDERED that the Trustee's and the Hardy Lenders' Motions to Dismiss, (Dkt. Nos. 25, 29), are GRANTED.

DATED this 27th day of May, 2015.

BY THE COURT:

Clark Waddoups
United States District Court Judge